Bradbury, J.
The first, and principal, question to be determined in the case arose • upon the demurrer to the petition and respects the jurisdiction of this court over the subject of the' action. That the original jurisdiction of this court cannot be enlarged or diminished by legislative action, but is such, only, as the constitution confers, was settled at an early day after the present constitution was adopted. Kent v. Mahaffy, 2 Ohio St., 498; Wheeler v. Lynn, 8 Ohio St., 393. The jurisdiction thus conferred is confined to proceedings in quo warranto, mandamus, habeas corpus and procedendo.” Article IY, section 2. Therefore the subject matter of an original action in this court must fall within the scope of one or the other of those four specified proceedings, or its jurisdiction fails. True, Okey, J. in Knapp v. Thomas, 39 Ohio St., 377, expressed an opinion that the extent of the jurisdiction of this court ‘ ‘ in habeas corpus as well as the manner of its exercise, is undoubtedly, in some measure, within legislative control.” If this opinion is not in direct conflict with Kent v. Mahaffy, 2 Ohio St., 498, supra, and the other decisions of this court upon the question of its original jurisdiction, nevertheless it must be regarded as announcing a principle that can operate only within extremely limited boundaries, and if not *238 confined to proceeding’s in habeas corpus, yet can not be invoked to clothe this court with original jurisdiction over any substantially new subject matter on the assumption that • it falls within either of the other three heads of original jurisdiction.
The subject matter of the present inquiry, if within the jurisdiction of the court at all, falls properly within an action in quo warranto. It relates to a right or privilege claimed and exercised by the defendant, a body corporate under the laws of this state, in respect of lands that now constitute or formerly did, a part of the public canal system of this state, and calls upon the defendant to set forth the grounds upon which it claims such right or privilege. This isa proper office of a proceeding in quo warranto.
Quo warranto was anciently employed by the king to question the title of individual proprietors to lands of the crown, as well as to nearly every other privilege or franchise that emanated from or was held by the crown.” However, no modern instance of its exercise in England for the former purpose has been shown. 2 Reeves’ His. Eng. Law 211; People v. McKinch, et al., 23 Wend. (N. Y.), 222.
By the statutes of this state in force when our existing constitution was framed and adopted, quo warranto would lie against a corporation “whenever it shall have misused any franchise or privilege conferred, or exercise any franchise or privilege not conferred upon it by law.” 36 O. L., 69. Privilege is a comprehensive term; and to enter upon and occupy lands that form a part of the canal system of the state by anyone is exercising a privilege, in one sense of that term, and if this is done *239 without authority from the state, it is “exercising a privilege not conferred by law.” The statute on the subject in force now is more specific. Its language authorizes an action in quo warranto to be brought against a corporation “when it claims or holds, by contract or otherwise, * * * a franchise, privilege or right in contravention of law.” This would seem to expressly declare that any specific contractual right asserted by a corporation to which it had no illegal right might be made the subject matter of an action in quo warranto, at least if it concerned the public. We have seen, however, that the legislature has no authority to enlarge the jurisdiction of this court in quo warranto. It has been suggested in this connection that the later act of the general assembly is merely a legislative construction of the earlier one — that in force at the time of the adoption of our present constitution. This suggestion, however, has little or no value in solving* the question under consideration, for where the general assembly is without authority to alter a statute directly, it cannot accomplish the same end indirectly by an attempt to construe its meaning.
This question of jurisdiction does not so much concern the ultimate rights of the parties as it does methods of procedure. The right of suitors respecting the subject matter in dispute will be determined by applying to the facts, when ascertained, the same principles and rules of law, whether the action was commenced in this court in quo warranto or in the court of common pleas by a real action. What the proper practice might be if the controversy was between the state and a private person we need not stop to discuss. The case before us being one where a *240 corporation, a mere creature of the state, is occupying lands admitted to have formed a part of the canal system of the state, is required to set forth the grounds by which its occupation is justified.
The practice of bringing in this court, proceedings in quo warranto to determine controversies, similar in all essential respects to that involved in this action, originated nearly a score of years ago. In State ex rel. v. Railway Co., 37 Ohio St., 157, a case like the one under consideration, the original jurisdiction of this court was successfully invoked. True, the jurisdiction of the court does not seem to have been challenged in that case, a circumstance doubtless weakening its force as an authority. Since that decision was rendered, however, and upon its authority the jurisdiction of this court, in cases involving the same question, has been exercised a number of times. And in the unreported ease of The State ex rel. v. The Toledo and Walhonding Valley R. R. Co., the jurisdiction being assailed was sustained after argument. The validity of a number of judgments rests solely upon this jurisdiction; if the jurisdiction did not subsist those judgments are absolutely void. In view of the serious consequences that would follow from overruling those cases, it should not be lightly done.
The statute in force when the constitution was adopted, as we have seen, authorized proceedings in quo warranto against a corporation whenever it exercised any “franchise or privilege” not conferred upon it by law. The contention that the word “privilege” was used advisedly by the legislature as more comprehensive than “franchise,” and in a sense broad enough to comprehend a specific claim in respect of public property, is not without reason for its support. If the word “priv *241 ilege” was employed as synonymous with “franchise” its use was superfluous. If not employed as synonymous with franchise, in what sense was it employed ?
In this connection it may prove profitable to refer to the difference between the language this statute used to authorize a proceeding in quo warranto, and that employed to limit the time within which to bring the proceedings, 36 O. L., 69, and section 8 and section 26, p. 73. The action may be brought whenever a corporation exercises a “franchise or privilege not conferred upon it by law.” The limitation of time is made to apply to the exercise of a “power or franchise” under its charter. The phrase “franchise or privilege not conferred * * by law ” is more comprehensive than the words “ power or franchise * * under its charter.” The' former phrase, according to the sense it ordinarily bears, doubtless includes many things not embraced by the latter. This marked difference of phraseology should not, needlessly, be attributed to accident. If the general assembly intended that where a corporation merely exercised a power or franchise under, that is by virtue of its charter, this power or franchise should not be challenged by the state after twenty years’ user, and also intended that an action in quo warranto might be brought against a corporation, and that too without limitation of time, whenever it claimed or exercised an unwarranted right or privilege respecting the property of the state, it chose, in the language just quoted, an appropriate medium to express such intention.
The former decisions of this court sustaining its jurisdiction in this class of cases must be based upon doctrines of the common law or upon the pro *242 visions of the statute just referred to, which were in force when the present constitution was adopted. If we concede that the common law doctrine had become obsolete at the time the constitution was adopted, then the court, heretofore in entertaining-original jurisdiction in this class of controversies, must have held that it was authorized by the statute. The ancient rule of the common law authorizing proceedings in quo warrcmto by the crown against a subject asserting some right respecting lands claimed by the crown, together with the aptness of the proceeding to advance the inquiry, are not wholly immaterial upon this question of statutory construction. If it once existed and had become obsolete, that, together with its appropriateness as a remedy, may have been the cause of legislative action on the subject.
In view of these considerations we adhere to the former decision^ of the court upon the question of its original jurisdiction in this class of cases.
Having sustained the jurisdiction of the court, the other grounds urged in support of the demurrer to the petition present but little difficulty. True, the petition discloses that the defendant has occupied lands forming- a part of our public canal system under a claim of right, for more than twenty years ; but statutes of limitation do not run against the state unless the intention that they shall so run is obvious. The limitation of time within which an action in quo warranto is to be commenced is found in section 6789, Revised Statutes, which reads: “Nothing in this chapter contained shall authorize an action against a corporation for forfeiture of charter, unless the same be commenced within five years after the act complained of was done or committed; nor shall an action be *243 brought against a corporation for exercising a power or franchise under its charter which it has used and exercised for a term of twenty years. ’ ’ * * * * As the present proceeding does not seek a forfeiture of the charter of defendant the five years’limitation does not apply. Neither does the twenty years’limitation apply, because the proceeding is not directed against the exercise of a ' ‘power or franchise under ’ ’ the charter of the corporation. Its object is to oust the defendant from a right it was exercising in respect of the canal lands of the state, and no limitation is prescribed to the bringing of an action to secure that end.
Whether the petition states a cause of action depends upon the title the state acquired in the lands in controversy when it appropriated them to canal purposes, and the construction that should be given to conveyance it made to the city of Cincinnati.
That the title of the state to its canal lands is one in fee simple is a question of law. The only fact to be ascertained is whether the lands were in fact a portion of the canal system. How the acquisition was made is not material. The mere seizure and appropriation of a parcel of land for canal purposes, by force, of the statute under which our canals were constructed, was alone sufficient to vest in the state a fee simple title to them. Nor could any other title than one in fee simple be received by the state for lands to be devoted to a canal. A mere occupation of lands by the state for canal purposes, was a seizure and appropriation of it to that purpose, and to be devoted to that purpose was to give to the state a fee simple title thereto. No conveyance was necessary ; the *244 seizure and occupation transferred to the state the entire estate in the lands so seized and occupied, leaving to the former owner simply a claim for compensation. 23 O. L., 56 (section 8.) Malone v. Toledo, 28 Ohio St., 643; Malone v. Toledo, 34 Ohio St., 541.
The lands, the occupation of which is the subject of controversy in this action, were a part of the canal lands of the state, to which, as before stated, the state had a fee simple title. The statute of 1863, 60 O. L., 44, did not authorize a conveyance in fee to the city of Cincinnati of the parcel of land in controversy, nor did the deed of the governor made pursuant thereto purport to convey such title. The statute, as well as the deed, expressly describes the interest conveyed. It was an “authority and permission to the city of Cincinnati to enter upon, improve and occupy forever as a public highway and for sewerage purposes,” the land in controversy. No other estate, right or interest was granted or intended to be granted than that just recited. Grants made by the state are not to be extended by construction. The grant was of a right to occupy and improve this strip of land for two specified purposes — for sewerage and a public highway — the fee remaining in the state. No power of sale passed to the city nor any power to barter this strip of land for another strip or parcel lying elsewhere, although the latter should be used for street or sewerage purposes. The limits of the rights of the city under the conveyance was to improve and use the land conveyed for sewerage and street purposes; it could use or apply it to no other purpose itself, nor could it grant to another any right whatever in these lands. The city, by the *245 ordinance of December 1, 1871, vacated Eggleston avenue from the north line of Front street to the south line of Pearl street. That was a direct abandonment of the right which had been conveyed to the city by the state to improve and use for a street the portion thus vacated; and by the use to which it permitted the defendant to appropriate that portion of the strip which is situate south of Pearl street, it may be fairly inferred, that the city has abandoned that also. The city having abandoned this right it reverts to the state from which the right emanated. The state was the absolute owner in fee of the whole estate and interest in this strip of land; it conveyed to the city a right to use it for two specified purposes only; upon the abandonment by the city of either purpose' the interest, to that extent returns to the grantor. By the express terms of the deed made to the city, as well as by the terms of the statute authorizing it, the city was authorized to enter upon, improve and occupy * * *■ all or any part of the strip of land which is the subject of controversy, so the fact that the city has abandoned a part of the land for street purposes does not work an abandonment of the whole. Nor is the use to which the city has permitted the defendant to devote that part of the land which lies between Broadway and Pearl streets, inconsistent with its continued use by the city for street purposes, and therefore such use by the defendant does not work an abandonment of the city’s rig’hts. But as the right granted to the city only authorized a use by the city itself of the premises granted, the city could grant no right to the defendant to lay its track thereon, and there *246 fore such, use of the premises by the defendant is without authority of law.
These views require us to overrule the demurrer to the petition.
We now pass to a consideration of the answer which, as we have seen, is attacked by both a demurrer and a motion.
The first defense among other things denies the allegations of the thirteenth, fourteenth, fifteenth, sixteenth and seventeenth paragraphs of the petition. These paragraphs, excepting the thirteenth, state no facts upon which relief is predicated, but are in the nature of conclusions drawn by the pleader from material facts before averred in the petition, and their denial therefore raises no material issue.
The thirteenth paragraph of the petition is in the following- words:
‘ ‘ 13. The plaintiff avers and charges that subject to the rights, privileges and easements therein, which were granted to the city of Cincinnati by the state under the act of March 24, 1863, excepting, however, such of the rights, privileges and easements thus granted as by reason of the facts hereinbefore stated have since then been released, abandoned or forfeited by said city, the state of Ohio has been since the said 24th day of March, 1863, and now is the owner in fee and entitled to the full use and possession of that part of the Miami and Erie canal extending from the east side of Broadway in the city of Cincinnati to the Ohio river, including the width thereof, as owned and held by the state on said date.”
To deny the averments of this paragraph would seem to put in issue the title of the state to land occupied by the defendant. The first defense of *247 the answer not only denies the averments of this paragraph, but proceeds as follows: “And the defendant denies that the plaintiff on or prior to the 24th day of March, 1863, or at any other time was or is the owner in fee of the real estate, or any part of the real estate mentioned in the petition; but, on the contrary, says that the plaintiff has not and never had any interest or estate therein, except the right to use and occupy a portion thereof for canal purposes, that no compensation was ever paid therefor by the plaintiff and that no title in any of said real estate was ever conveyed to the plaintiff or otherwise acquired by it. ”
We have already adverted to the method by which the state acquired its canal lands; no conveyances were required, nor was any legal or formal proceedings of any kind necessary; it simply occupied such as the canal commissioners desired — this occupancy by force of the statute, 23 O. L., 56, section 8, vested the legal title in the state. No direct averment of title was necessary; from the fact alone that a tract of land was occupied by the state for the purposes connected with its canal system, it followed as a matter of law, that the state owned it in fee simple. Under this state of the title, to simpty deny that the state had a title in fee was to deny a conclusion of law. To contest the state’s title, the party must deny that the lands were part of the canal system of the state, and the answer falls short of doing so. In fact, when the whole answer is considered, the connection of the lands occupied by the defendant, with the canal system of the state as clearly appears, as it does on the face of the petition, the attempted denial of title therefore is not sufficient to raise a *248 material issue and the demurrer to it should be sustained.
The remainder of the answer contains no matter entitled to an extended discussion. The defendant knew, or had the means of knowing’ the terms of the conveyance made by the state to the city of Cincinnati; they appear not only in the conveyance itself, but also in the act of the legislature by which the conveyance was authorized. It made the arrangement with the city by means of which it entered into occupancy of these lands, and expended its money in erecting structures, and placing railroad tracks thereon at its peril. If in any case the property of the state can be lost by an estoppel predicated upon the negligence, or bad faith of one of its officers or agents, the facts of this case do not create one. Neither was the state a party to any of the eases which are claimed to sustain the defendant in its contention that practically the whole interest and title of the state passed to the city by virtue of the deed made to it for these lands, and that the defendant acquired by its .contract with the city the same rights. Doubtless if the city had any rights in the premises which it could convey, they passed by the deed to the defendant; but as the city had no rights therein other than that of occupancy by itself for specified purposes, and such rights not being subject to a -conveyance, of necessity nothing passed by its deed.
The demurrer to the answer should be sustained.
This disposes of the answer; true, the larger part of it might be stricken out as immaterial, but we deem it unnecessary to consider it with a view to that end.
*249 The defendant, upon the day the cause was finally submitted, asked and obtained leave to file the following amendment to its answer: “The defendant, for amendment to its answer says, in addition to thé allegations thereof, that this proceeding and the laws purporting to authorize the same aré in contravention of the constitution of the United States, and especially of the fifth and fourteenth articles of amendment.”
As our attention has not been directed to any inconsistency between the proceeding under consideration, or the statute by which it authorized, and the constitution of the United States, and as we perceive none, we enter upon no discussion of the question. Judgment for relator.